MR. JUSTICE KELLEY
dissenting:
The majority opinion holding that the “long arm statute” does not apply turns solely upon the conclusion that rights arising under the paternity statutes (1967 Perm. Supp., C.R.S. 1963, 22-6-1, et seq.) do not fall within the class described as “a tortious act” in subsection (c) of the long arm statute.
The court states that it has “considered the numerous definitions of a ‘tort’ and ‘a tortious act’ and none of them by the application of the most liberal rules of construction would tolerate the inclusion of an act of sexual intercourse between consenting adults, which, in the absence of allegations otherwise, is the nature of the act involved in this paternity case.”
First, I submit, it is not “the act of intercourse” which is involved, except indirectly. What is involved statutorily is “the paternity of a child and to compel support.” (22-6-1) The action “may be commenced by the mother, ... by the child’s guardian of the person, or, if the mother or the child is a public charge, by the County Department of Welfare.” (22-6-1)
Second, the late Professor Prosser, whose eminence in the field of tort law is generally recognized, says that:
“A really satisfactory definition of a tort has yet to be found. The numerous attempts which have been made to define the term have succeeded only in achieving language so broad that it includes other matters than torts, or else so narrow that it *444 leaves out some torts themselves. . . . Broadly speaking, a tort is a civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages . . . .” W. Prosser, Law of Torts 1, 2 (4th ed. 1971).
In the instant situation, the legislature has in effect said that the social policy of this state imposes upon the father of a child born out of wedlock financial responsibility for his care. In providing this responsibility, our state has provided for redress either by the mother or by the state itself if it has to assume the responsibility for the support of the child. In creating this liability, I am sure that it did not intend to deprive itself of the ability to attempt to obtain redress from a putative father who seeks to immunize himself by crossing the state line. On the contrary, it seems quite clear that the long arm statute reflects a conscious intent to assert jurisdiction over non-resident defendants to the extent permitted by the due process clause. Poindexter v. Willis, 87 Ill. App. 2d 213, 231 N.E.2d 1 (1967); Poindexter v. Willis, 23 Ohio Misc. 199, 256 N.E.2d 254 (1970).
Continuing his analysis of a tort, Professor Prosser suggested:
“It might be possible to define a tort by enumerating the things that it is not. It is not crime, it is not breach of contract, it is not necessarily concerned with property rights or problems of government, but is the occupant of a large residuary field remaining if these are taken out of the law
He also noted that:
“. . . There is no necessity whatever that a tort must have a name. New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before . . . .” W. Prosser, supra, at 2, 3.
Passing from the text in reference to a definition, Professor Prosser analyzes the characteristics of a tort. This pertinent statement is particularly apropos here:
“. . . it has been said that torts consist of the breach of duties *445 fixed and imposed upon the parties by the law itself, without regard to their consent to assume them, or their efforts to evade them . ...” W. Prosser, supra, at 4.
And finally, these applicable statements from the Prosser text:
“. . . Liability in tort is based upon the relations of men with another; and those relations may arise generally, with large groups or classes of persons, or singly, with an individual.”
* * *
“The law of torts, then, is concerned with the allocation of losses arising out of human activities; and since these cover a wide scope, so does this branch of the law ....
“. . . The common thread woven into all torts is the idea of unreasonable interference with the interests of others .... The tort-feasor usually is held liable because he has acted with an unreasonable intention, or because he has departed from a reasonable standard of care . ...” W. Prosser, supra, at 5, 6.
It appears to me that by the enactment of 1965 Perm. Supp., C.R.S. 1963, 37-1-26, the General Assembly intended to include in the coverage of the Act, consistent with due process, all types of transactions except those which are criminal.
I am authorized to say that MR. CHIEF JUSTICE PRINGLE joins in this dissent.